UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  :
 : CHAPTER 11
Devon Health Services Inc., :
 :
 : BANKRUPTCY NO. 13-20219 (SR)
Debtor. :
 :

**MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER
PURSUANT TO 11 U.S.C. §363 TO (I) PERMIT USE OF CASH COLLATERAL AND
PROVIDE ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN
CASH COLLATERAL, (II) AUTHORIZE PAYMENT OF PREPETITION WAGES,
(III) REQUEST FOR EXPEDITED HEARING, REDUCED NOTICE PERIOD
AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9006(C)(1) AND E.D. PA. L.B.R. 5070(F)
AND (IV) FOR RELATED RELIEF**

Devon Health Services Inc., ("Devon" or the "Debtor") by and through proposed counsel, Ciardi Ciardi & Astin, hereby requests an order granting authority to (I) use Cash Collateral and Provide Adequate Protection to Parties with Interest in Cash Collateral, (II) Pay Prepetition Wages, (III) request an Expedited Hearing, Reduced Notice Period and Limited Notice Pursuant to Federal Rule of Bankruptcy Procedure 9006(c)(1) And E.D. Pa. L.B.R. 5070(f), and (IV) related Relief (the "Motion") and in support thereof, respectfully represents:

## JURISDICTION

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

1

## BACKGROUND

2. On November 22, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to title 11 of chapter 11 of the United States Code, as Amended (the "Bankruptcy Code").

3. No trustee or examiner has been appointed in this Chapter 11 case. As of today's date, no creditors' committee has been appointed in this Chapter 11 case by the United States Trustee.

4. Devon Health Services Inc. operates a PPO (Preferred Provider Organization) and related activities.

5. The Debtor, as of the Petition Date, has 37 employees and pays $112,558.00 in payroll per pay period.

6. Wilmington Savings Fund Society ("WSFS") Stipulation. Prior to the Petition Date, the Lender made various loans to DHS (collectively, the "DHS Loan"), pursuant to, among other things, that certain Business Loan Agreement dated December 23, 2008 (as amended, restated, supplemented or modified from time to time, the "Loan Agreement"), and a Revolving Working Capital Line of Credit Note dated December 23, 2008 in the original maximum principal amount of $3,000,000, which was amended and restated in its entirety by an Amended and Restated Revolving Working Capital Line of Credit Demand Note dated March 30, 2012 in the maximum principal amount of $2,707,267.31 (the "Note" and collectively with the Loan Agreement and the DHS Security Agreement (as defined herein) the "DHS Loan Documents").

7. Prior to the Petition Date, WSFS made a $13,800,000 loan (the "JABMD First Priority Loan") to JABMD, LLC ("JABMD") pursuant to a Business Loan Agreement dated

2

December 7, 2007 (as amended, restated, supplemented or modified from time to time, the "JABMD First Priority Loan Agreement") and an Amended and Restated Promissory Note dated August 31, 2012 in the original principal amount of $12,696,675 (the "JABMD First Priority Note").

8. Pursuant to a Guaranty Agreement dated December 7, 2007 (the "JABMD First Priority Guaranty" and collectively with the JABMD First Priority Loan Agreement and the JABMD First Priority Note, the "JABMD First Priority Loan Documents") DHS and certain related non-Debtors guaranteed the JABMD First Priority Loan.

9. Prior to the Petition Date, WSFS made a $1,750,000 loan (the "JABMD Second Priority Loan") to JABMD pursuant to a Business Loan Agreement dated December 7, 2007 (as amended, restated, supplemented or modified from time to time, the "JABMD Second Priority Loan Agreement") and an Amended and Restated Promissory Note dated August 31, 2012 in the original principal amount of $483,607.81 (the "JABMD Second Priority Note").

10. Pursuant to a Guaranty Agreement dated December 7, 2007 (the "JABMD Second Priority Guaranty" and collectively with the JABMD Second Priority Loan Agreement and the JABMD Second Priority Note, the "JABMD Second Priority Loan Documents" and collectively with the JABMD First Priority Loan Documents, the "JABMD Loan Documents"; the JABMD Loan Documents and the DHS Loan Documents are collectively referred to herein as the "Loan Documents") DHS and certain related non-Debtors guaranteed the Second Priority Loan.

11. Prior to the Petition Date, as security for the DHS Loan, the JABMD First Priority Guaranty and the JABMD Second Priority Guaranty, DHS and WSFS entered into that certain Amended and Restated Security Agreement, dated as of December 31, 2009, which amended and

3

restated that certain Security Agreement dated as of December 23, 2008 (as amended or otherwise modified, the "DHS Security Agreement"), pursuant to which DHS granted to WSFS first priority, valid, and perfected liens on and security interests in all of DHS's personal property, including, without limitation, all tangible and intangible assets and rights of every kind and nature, wherever located, whether then owned or thereafter acquired or arising, and all cash and noncash proceeds thereof, products thereof, additions and accessions thereto, substitutions therefor, and replacements thereof (collectively, the "Pre-Petition Collateral").

12. On January 30, 2009, WSFS filed a UCC-1 financing statement with the Secretary of the Commonwealth of Pennsylvania (file number 2009020202785), naming DHS, as the debtor, and describing the Pre-Petition Collateral.

13. WSFS alleges that the aggregate outstanding principal due under the Loan Documents as of the Petition Date was $15,053,071.03.

14. Further, Itochu International, Inc. asserts a junior lien on the assets of the Debtor pursuant to a judgment obtained in September 2013 in the approximate amount of $6,800,000.

## RELIEF REQUESTED

15. The Debtor requires use of its cash and accounts to continue operations of its business.

16. Section 363(c) of the Bankruptcy Code allows a debtor to use, sell or lease cash collateral if each entity that has an interest in cash collateral consents or the Court authorizes the use. See 11 U.S.C. §363(c)(2).

17. The Debtor has prepared a budget (the "Budget") detailing its proposed use of cash collateral from November 22, 2013 through January 31, 2014. This budget is attached

hereto as **Exhibit "A."** The Debtor initially seeks use through December 31, 2013 or such shorter time period as the Court deems just and appropriate.

18. The Debtor anticipates a $400,000 contribution from John and Nancy Bennett, personally, to fund the operating deficit outlined in the budget. This contribution will be categorized as equity and not a loan and will not be subject to repayment.

19. Further, the Debtor notes it employs in-house financial, accounting, marketing, technical support, human resources and legal services through a related entity, Devon Professional Services Group, LLC ("DPSG"), and pays approximately $123,000 per month for such services and personnel. This fee is customarily based on use of employees and the revenue of the Debtor. Devon Professional Services Group, LLC does not receive a fee or overhead from the Debtor. The monthly payment made by the Debtor to Devon Professional Services Group, LLC goes directly to fund payroll of those professionals providing services to the Debtor and is reflected in the "DPSG Funding" line item in the budget. Approximately 20 employees of DPSG are utilized by the Debtor.

20. Finally, the Debtor receives $75,000 per month from a related entity, Concilium, LLC, as a reimbursement for payroll for 9 Concilium, LLC employees who are on the Debtor's payroll. This reimbursement is then offset by a $22,500 biweekly payment from the Debtor to Concilium, LLC for services rendered by Concilium, LLC for the benefit of the Debtor.

21. The continued use of cash collateral will allow the Debtor to continue operating, so that Debtor can continue with this reorganization by proposing a plan to satisfy the claims of creditors.

22. Moreover, the Debtor proposes to provide to WSFS adequate protection in the form of an adequate protection payment and a replacement lien of the same extent, priority and validity as existed pre-petition.

23. The Debtor believes that the request to use cash collateral is proper, reasonable and necessary to continue the Debtor's operations.

24. Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor and creditors of the estate.

25. In order to maintain the Debtor's operation, Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in Budget. Through the payment of the above referenced expenses the Debtor will be able, not only to maintain the status quo, but also to facilitate its reorganization and enhance the collateral.

26. Finally, to maintain employee morale and preserve the Debtor's workforce at this critical time, to reduce the disruption caused by the bankruptcy filings on the Debtor's business operations, and to minimize the personal hardship the Debtor's employees will suffer if its employee-related obligations are not paid when due, the Debtor requests entry of an order authorizing, but not requiring, the Debtor (a) to pay, in the ordinary course of business, all prepetition employee compensation and employee benefits earned from November 16, 2013 through and including November 29, 2013; (b) to honor and take all necessary actions to continue in the ordinary course of business until further notice (but not to assume), certain employee-related programs, policies and plans that were in effect as of the filing of these chapter 11 cases; and (c) to make, in the ordinary course of business, all normal and customary

deductions and withholdings and pay all taxes associated with the Debtor's obligations to employees.

27. By this motion, the Debtor does not seek authorization to assume any contracts relating to senior executives currently employed by the Debtor. Further, the Debtor does not seek to pay any pre-petition compensation or other amounts to executives, amounts due in connection with the continuation of the employee benefits described herein, and expense reimbursement amounts, all in accordance with existing plans, policies, and programs.

28. As of the Petition Date, the Debtor employed 37 employees (the "Employees"). In the ordinary course of business, the Debtor issues payroll checks on a biweekly basis, totaling approximately $112,558 in gross wages.

29. The Debtor's next payroll is scheduled to occur on Friday, December 6, 2013. As of the Petition Date, the Debtor estimates that it owes its employees approximately $112,558 in unpaid, gross wages (the "Unpaid Compensation") accruing from November 16, 2013 through November 29, 2013. Items of Unpaid Compensation were outstanding on the Petition Date because the Debtor's next scheduled payment disbursement is not until December 6, 2013.

30. The Debtor hereby seeks authority to pay Unpaid Compensation accruing from November 16, 2013 through November 29, 2013. The Debtor does not believe that the Unpaid Compensation payable to any one employee exceeds $10,950. No officer or shareholder will receive unpaid pre-petition compensation but will be paid for post-petition services.

31. The Debtor maintains various plans and policies to provide employees with medical, dental, drug prescription, life and accidental death or dismemberment insurance, retirement savings, workers' compensation and other similar benefits (collectively the

"Employee Benefits"). The Debtor wishes to continue offering the Employee Benefits to the Employees and their families. Any failure to pay the Employee Benefits would be injurious to employee welfare, morale and expectations. The Debtor is current on monies owed under the various Employee Benefit programs.

32.  The Debtor does not believe, at present, that any of its employees are owed aggregate amounts for services rendered prior to the Petition Date in excess of the $10,950 amount to which such employees would be entitled with administrative priority under section 507 of the Bankruptcy Code. The Debtor urges the Court to approve the payment of the amounts owed to the Debtor's employees, given the critical nature of the employees to the Debtor's businesses, as stated above. The Debtor believes that failure to pay the employees for their pre-petition services in full would have grave consequences for the Debtor's ability to function in the future.

33.  The Debtor hereby seeks authority to pay all Employee Benefits in the ordinary course of business. The Debtor also seeks authority to continue the Employee Benefits programs after the Petition Date.

34.  As a result of the commencement of these chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its prepetition obligations regarding Unpaid Compensation and Employee Benefits (collectively, the "Prepetition Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored.

35. Accordingly, pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtor seeks authority to; (i) pay its outstanding Prepetition Employee Obligations; and (ii) continue its practices, programs and policies in effect as of the Petition Date with respect to the Prepetition Employee Obligations. The Debtor further requests that the Court authorize and direct the bank at which the Debtor maintains the account from which the Debtor's payroll obligations are disbursed, to honor and pay all prepetition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Prepetition Employee Obligations. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the bank. The relief requested herein is essential and necessary to the Debtor's continued operations in chapter 11 and to an effective reorganization.

36. The payment of the Prepetition Employee Obligations is justified under Section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." The Debtor believes that the amounts they seek to pay are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions.

37. Under the "necessity of payment doctrine" and Section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition claims of employees. See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); Gregg v. Metro. Trust Co., 197 U.S. 183, 187 (1905) (stating that "the payment of the employees

of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (finding that payment of prepetition wages, salaries, reimbursable business expenses and health benefits to active employees of debtor airline authorized); In re Chateaugay Corp., 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor, prior to plan stage of case, to pay prepetition wages, salaries, expenses and benefits); In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989) (permitting payment of prepetition wages, benefits and expenses as necessary to maintain going concern values and to assist reorganization efforts).

38.     The continued operation of the Debtor's business depends on the retention and motivation of its Employees. The Debtor believes that, to avoid employee resignations and to maintain employee morale, it is critical that it be authorized to pay each of its Employees all compensation amounts that have been earned under the Debtor's prepetition contractual obligations or practices.

39.     It is equally essential that the Debtor take all actions reasonably necessary to continue on an uninterrupted basis in the ordinary course of business all of the employment policies that were in effect prior to the Petition Date. Payment of these obligations and the continuation of all of these programs and policies are essential to ensure that the Debtor retain its employees and maintain employee morale.

40.     Moreover, the Debtor estimates that the amounts its seeks to pay herein are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions. Section 507(a)(3) of the Bankruptcy Code grants priority to employee

claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within ninety days before the filing of the applicable petition up to $10,950 per employee. Similarly, section 507(a)(4) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $10,950, less any amounts paid pursuant to Section 507(a)(3) of the Bankruptcy Code.

41. Thus, granting the relief sought herein would affect only the timing and not the amount of payment of the Prepetition Employee Obligations to the extent they constitute priority claims. Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees will be exposed to significant financial and health-related problems if the Debtor is not permitted to pay certain of the unpaid expenses and Prepetition Employee Obligations, particularly wages and other Employee Benefits. Moreover, the Debtor believes that if it is unable to honor the Prepetition Employee Obligations, employee morale and loyalty will be jeopardized at a time when it is most critical. If the Debtor is not authorized to pay for the Employee Benefits, then many of the Employees may not be reimbursed or otherwise have their health benefit claims paid. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed, and may face having their health care services terminated. The Debtor believes that such uncertainty will cause significant anxiety at precisely the time the Debtor needs its Employees to perform their jobs at peak efficiency.

## REQUEST FOR EXPEDITED CONSIDERATION

42. The Debtor requests expedited treatment in connection with the Motion because it requires the immediate use of cash collateral to fund ongoing operations mentioned in the Motion. Accordingly, the Debtor requests that a hearing on use of cash collateral through December 31, 2013 be held at the convenience of the Court but no later than November 27, 2013.

43. As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given via facsimile or electronic mail to the Office of the United States Trustee, counsel for WSFS and the Counsel for Itochu International, Inc. The Debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate and all parties in interest that would ensue if the relief requested herein is not granted.

44. No previous request for the relief sought herein has been made to this or any other Court.

45. Prior to filing this Motion, counsel for the Debtor contacted the Counsel for the Office of the United States Trustee, Counsel for WSFS and Counsel for Itochu International, Inc. to advise them of the request for an expedited hearing and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

CIARDI CIARDI & ASTIN

_/s/ Albert A. Ciardi, III_
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA  19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

Proposed Counsel for the Debtor

Dated:  November 25, 2013